**SHINTOM AMERICA, INC. a/k/a Shintom (West) Corporation of America, Plaintiff,**

v.

**CELLULAR INFORMATION NETWORK, INC.; Car Phone Store, Inc. d/b/a Car Phone Center; Farm Fresh, Inc.; Otto M. Stroud, Jr.; William D. Stroud; and Douglas A. Stroud, Defendants.**

**Civ. A. No. 2:92cv382.**

United States District Court, E.D. Virginia, Norfolk Division.

June 28, 1993.

decided, federal officials and agencies could only be sued in the District of Columbia.

Donald Sumner Clarke, Virginia Beach, VA, Ronald P. Duplack, Jerome F. Crotty, Richard J. Sorman, Rieck and Crotty, P.C. Chicago, IL, for Shinton America, Inc.

Richard Hoyt Matthews, Pender & Coward, Robyn Leigh Neal, Pender & Coward, Virginia Beach, VA, for Cellular Information Network, Inc.

Robyn Leigh Neal, Pender & Coward, Virginia Beach, VA, for Phone Store, Inc.

Hunter Wilmer Sims, Jr., Stephen Edward Noona, Kaufman & Canoles, Norfolk, VA, for Farm Fresh, Inc.

Richard Hoyt Matthews, Robyn Leigh Neal, Pender & Coward, Virginia Beach, VA, for Otto M. Stroud, Jr., William D. Stroud, Douglas A. Stroud.

## ORDER

CLARKE, District Judge.

This matter is before the Court on the Complaint of Plaintiff, Shintom America, Inc. ("Shintom"), asking this Court to 1) declare that Defendants Cellular Information Network, Inc. ("CINET"), Car Phone Store, Inc., d/b/a Car Phone Center, Otto M. Stroud, Jr., William D. Stroud and Douglas A. Stroud (collectively "Cellular") entered into a joint venture with Defendant Farm Fresh, Inc. ("Farm Fresh") to promote and sell cellular car telephones; and 2) grant judgment for joint and several liability against Farm Fresh in the amount of $671,-355.92. For the reasons set forth below, the Court FINDS that Cellular and Farm Fresh did not enter into a joint venture, and thus Farm Fresh is not liable to Shintom for the monies due and owing to Shintom from Cellular.

## FACTS

This case concerns the promotion and sales of cellular car telephones. After hearing trial testimony and counsels' argument, weighing the credibility of witnesses and considering the memoranda and exhibits filed in this case, the Court makes the following findings of fact and conclusions of law. Shintom is a California corporation engaged in the business of cellular telephone equipment sales and services. CINET is a Virginia corporation engaged in the business of cellular telephone equipment marketing and sales. Farm Fresh is a major grocery/specialty store with locations throughout the Richmond and Tidewater areas. Contel, Inc. ("Contel") is a Virginia corporation in the business of providing and activating telephone service.

CINET acquired cellular car telephones from Shintom from November 1990 to March 1991 pursuant to various purchase orders creating accounts receivable amounting to $671,355.92. When CINET refused Shintom's demands for payments, Shintom filed suit in this Court for amounts due on the accounts receivable. Pursuant to subsequent discovery, the following defendants were added to Shintom's complaint: Car Phone Store, Inc., d/b/a Car Phone Center (a wholly owned subsidiary of CINET), Otto M. Stroud, Jr. (President of CINET and Car Phone Center), William D. Stroud (Secretary/Treasurer of Car Phone Center), and Douglas A. Stroud (Vice President of Mar-

keting and Secretary/Treasurer of CINET). Later discovery resulted in the addition of Farm Fresh as a defendant.

The dispute in this case centers on cellular telephone sales promotions ("the Promotions") between Cellular and Farm Fresh which ran from November 1990 to June 1992 whereby Farm Fresh bought cellular car phones from Cellular for sale in its grocery stores.[1] Specifically, Farm Fresh advertised the sale in local newspapers and radio stations. Among the phones Farm Fresh advertised were ones manufactured by Shintom.[2] Farm Fresh's slogan "The Phone Center" was on some of the print ads and the following restrictions were in each ad: "'New' Service Contract with CONTEL CELLULAR Through Car Phone Center Required With Purchase" and that a credit check through Contel was required before purchase. Contel and Cellular reviewed some but not all of these advertisements to ensure they did not contain any misinformation and were not misleading.

Farm Fresh was responsible for supplying its customers with a service contract from Contel and running the credit check with Contel on all credit applications to ensure a purchaser could pay his/her phone bills. Once credit was approved, the customer paid Farm Fresh and received a certificate to take to a designated location where he/she would receive the phone from Cellular. Farm Fresh never held the phones in its inventory, and there is no evidence to show that Cellular agreed to keep a certain number of phones in its inventory for purpose of the promotions.

In effect, Farm Fresh purchased the phones and resold them to its customers much the same as it bought and resold groceries and other nonfood products. Farm Fresh decided which of its stores would run the promotions and in which part of the store the promotions would be located. Also, Cellular had no say in how many or which

employees Farm Fresh trained for the promotions.

Farm Fresh was not involved in the ordering of phones from Shintom by Cellular. The evidence also shows that during the promotions, Cellular sold its phones to others as well as Farm Fresh. Shintom extended credit to Cellular only after Cellular passed a credit check. The evidence also shows that Shintom was aware of the promotions between Farm Fresh and Cellular after Cellular reluctantly revealed them.[3] Nevertheless, Shintom never required Farm Fresh to provide it with any information, credit application, guaranty, pledge or any other legal obligation to pay for the cellular telephones ordered by Cellular.

All further customer dealings were with Cellular and Contel. Defendant Car Phone Center scheduled the installation and performed the service activation and telephone programming pursuant to the service contract between the customer and Contel. Cellular also sold the phones at the price advertised in the Farm Fresh advertisements to customers who went directly to its retail stores. The Car Phone Center, as an authorized agent for Contel, received $350 per phone installation, regardless of whether the customer bought the phone at Farm Fresh or at Cellular's retail location.

Farm Fresh ran several of these promotions, none of which were pursuant to any written agreement. During the first, Cellular did not charge Farm Fresh for the phones; Farm Fresh set the price and made a straight profit off the sales. In subsequent promotions Farm Fresh set the phones' prices according to the brand of telephone sold and its own business judgment. Although Cellular suggested prices, it was not consulted by Farm Fresh on this price determination nor did it have any control or say in Farm Fresh's pricing. Once a credit application was approved and the customer paid Farm Fresh, Cellular billed Farm Fresh for the number of phones sold at a price which

1. Farm Fresh never had any dealings with Shintom; all of its dealings were with Cellular.

2. Farm Fresh also offered other brands of cellular phones acquired by Cellular such as Nokia, NEC, Blaupunkt and Motorola.

3. Cellular felt it would lose its competitive edge by revealing the promotion to anyone.

was less than Farm Fresh charged its customers. Accordingly, Farm Fresh made its profits from the price it set to sell phones to its customers. It also bore the risk of any customer's bounced checks. On the other hand, Cellular made their profits from the fee per phone received from Contel for installing and servicing the phones as this fee was greater than the amount Cellular paid Shintom for the phones.

On the morning of trial, Shintom and Cellular entered into a settlement for the amount for $671,355.91, plus costs. Farm Fresh acknowledged the settlement but noted that it did not agree to the amount settled upon and reserved the right to contest any award Shintom claimed due from Farm Fresh. The three Stroud defendants were also dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. As a result of the Order, Shintom's only remaining claim was against Farm Fresh.

### DISCUSSION

Here Shintom asks the Court to look at the totality of the circumstances rather than the lack of a written joint venture agreement to find that a nontraditional joint venture was created between Cellular and Farm Fresh thereby making Farm Fresh liable for Cellular's debt to Shintom. Specifically, it argues Cellular and Farm Fresh entered into a joint transaction for their mutual benefit. Their common goal was to sell cellular telephones. Farm Fresh then benefitted by acquiring satisfied customers from the sales, and Cellular benefitted by gaining name recognition and increasing its own name recognition and sales at its retail stores. Basically, neither would have received its benefit without the joint efforts of the other. Farm Fresh contends there is no evidence of a joint venture here between Farm Fresh and Cellular.[4] Specifically, there is both a lack of sharing in the profits and losses and of mutual control between the parties. The Court agrees with Farm Fresh.

The existence of a joint venture is a factual question to be determined by the trier of fact on the basis of the evidence. *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 539 (4th Cir.1988). The elements of a joint venture in Virginia are an agreement, express or implied to 1) jointly share in the profits and losses of an undertaking in which the parties have a community of interest in the object and purpose and 2) have joint and mutual control and management by each party over the other in respects thereto. *Id.* Two cases are instructional on defining a joint venture: *Flip Mortgage* and *Wells v. Whitaker,* 151 S.E.2d 422 (1966).

In *Flip Mortgage,* the Fourth Circuit declined to find a joint venture between a mortgage and computer company who had contracted together to develop and market a family of computerized mortgage related services. Specifically, the mortgage company provided its financial, product development and marketing expertise and the computer company provided its computer, service and hardware expertise to the undertaking. The computer company also managed and operated the business and paid the mortgage company an agreed upon percentage of the revenues from the business. Although the mortgage company had control over certain business decisions, the majority of them were made by the computer company. The computer company, however, did not have any control over the mortgage company's decisions. Stressing the lack of mutual control and sharing of profits and losses, the Fourth Circuit determined the companies "were engaged in a relatively straightforward contractual relationship," 841 F.2d at 539, and thus the evidence did not warrant a finding of a joint venture.

Similarly, in *Wells,* an explosive mixing plant operator and an explosives supplier had an arrangement by which the operator mixed, sold and delivered to mining operations certain explosives received from the supplier on consignment. The supplier regularly took inventory of the consigned goods at the plant and reviewed plant procedures to

---

4. Farm Fresh contends in the alternative that since it did not sign any agreement binding it to answer for the debt owed by Cellular to Shintom, Virginia's Statute of Frauds bars any liability accruing to Farm Fresh. Since Cellular admits there is no contract between Shintom and Farm Fresh and it did not raise the argument in its Complaint, the Court need not address this issue.

advise the operator and its employees as to how to more effectively operate the plant and maintain its equipment. 151 S.E.2d at 427. In declining to find a joint venture between the supplier and the plant operator, the Virginia Supreme Court held that the supplier's providing of advice or assistance to the mixing plant operator was akin to providing "[a]ssistance to a prospective purchaser," and thus was insufficient evidence to show any joint control or management between the parties. *Id.* at 431. In addition, the Court did not find there was sufficient evidence to show the parties shared any profits or losses:

> Profits accruing from the movement of [goods] from the manufacturer ... to the processor ... and then to the ultimate consumer cannot be said to be a sharing of the profits of the processor. The profit accruing must be joint and several. Otherwise every person, firm or corporation who furnishes material or supplies in connection with an enterprise might be termed joint ventures, whether or not they had any such intention.

*Id.* at 430–431.

■ ■ In this case, there is no evidence of any agreement to share in the profits and losses of any undertaking nor is there evidence that either Cellular or Farm Fresh had any control over one another in the sale and installation of the cellular phones. First, Farm Fresh and Cellular derived their profits and losses from totally separate sources. Farm Fresh essentially purchased telephones from Cellular and resold them to its customers at a higher price. None of this profit was shared with Cellular. The evidence also shows that Farm Fresh incurred the majority of the costs of the advertisements and raised the price of the phones as the promotions went on to cover these costs without the advice or input of Cellular.[5] Moreover, Farm Fresh never attempted to recoup its costs from Cellular. Once the consumer had purchased the telephone and received a voucher to present to Cellular, Farm Fresh's involvement in the promotions was over. Cellular, on the other hand, made its profits and losses from its installation and

services fees provided to it by Contel Cellular and from the direct sales in its stores to customers at the prices offered in the Farm Fresh advertisements. If a customer returned a phone, Cellular had to return the $350 installation fee back to Contel; Cellular also incurred the costs of defective phones from Shintom. As in *Wells*, the profits and losses were several and not joint.

Additionally, as in *Flip Mortgage*, there was no sharing in the control or management of the sale, installation and servicing of the cellular phones. Farm Fresh set whatever price it wished for sale to its customers, and the advice Cellular gave in the advertisements was, as in *Wells*, merely technical due to the nature and complexity of cellular service and therefore rendered so as to not mislead Farm Fresh customers. Farm Fresh independently and without control or management by Cellular determined which of its stores would run the promotions and in which part of the store the promotions were to be held. Cellular independently and without control or management by Farm Fresh acquired the phones for sale in the promotions and installed and serviced the phones after their sale. Although there is evidence that Cellular trained Farm Fresh employees in how to perform the credit check, it is insufficient to show any control between the parties. *See Wells*, 151 S.E.2d at 427. As in *Flip Mortgage*, Farm Fresh and Cellular engaged in a "relatively straightforward contractual relationship."

### CONCLUSION

For the reasons stated above, the Court **FINDS** Farm Fresh and Cellular did not share in the profits or losses of the promotions nor did they control or manage the other in these promotions. Accordingly, no joint venture exists between Cellular and Farm Fresh, and Farm Fresh is not liable to Shintom for monies due and owed on an open account between Shintom and Cellular.

Accordingly, it having been represented in open court that plaintiff has settled its claims, as set forth in its complaint, with all

---

**5.** Contel did pay some "co-op" money through the Car Phone Center to pay for the ads. However, this is of no consequence as it customary in the grocery industry.

the other defendants, this action is **DIS-MISSED** with prejudice as to all defendants.

**IT IS SO ORDERED.**